UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS PRADO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OFFICER T. SULLIVAN,<br><br>　　　　　Defendant. | Case No. 22-cv-02517-AMO (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND ADDRESSING OTHER PENDING MOTIONS**<br><br>Re: Dkt. Nos. 33, 40, 43 |

Before the Court is Defendant Officer T. Sullivan's motion for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff Luis Prado failed to properly exhaust available administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA").[1]  Dkt. 33.

## I.  BACKGROUND

### A.  Prado's Eighth Amendment Claim

On April 26, 2022, Prado, a prisoner at the Correctional Training Facility ("CTF"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging an Eighth Amendment claim against Defendant. Dkt. 1.

Prado alleges the following: On or about November 30, 2020, Prado was assigned to a single cell when Defendant ordered him to take a cellmate from B-yard. *Id.* at 4.[2]  Prado tried to refuse the cellmate to protect himself from COVID-19 and noted that inmates from B-yard were

---

[1] Defendant also moves for summary judgment on alternative grounds that: (1) there is no genuine dispute of material facts to support Prado's Eighth Amendment claim for deliberate indifference, and (2) she is entitled to qualified immunity. *See* Dkt. 33.  Because the Court grants the motion on exhaustion grounds, it does not consider these alternate bases.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Prado.

testing positive for COVID-19. *Id.* Defendant forced Prado to accept the cellmate who had a "runn[y] nose and coughed a lot." *Id.* On or about December 5, 2020, Prado tested positive for COVID-19, and he continues to experience chest pain, shortness of breath, dizziness and confusion. *Id.* at 4-5.

On May 13, 2022, Magistrate Judge Laurel Beeler found that, liberally construed, the complaint stated a cognizable Eighth Amendment claim against Defendant for exposing Prado to COVID-19. Dkt. 7 at 3. Thereafter, this action was reassigned to the undersigned judge. Dkt. 36.

### B. Prado's Efforts to Exhaust His Administrative Remedies

On July 8, 2021—seven months after he tested positive for COVID-19—Prado submitted grievance log number 000000137705 to the Office of Grievances ("OOG") at CTF for the first institution-level review. Monroy Decl. ¶ 6, Ex. A (Dkt. 33-5 at 5-8). Prado complained that he was forced to take a cellmate, and later contracted COVID-19 on December 9, 2020. *Id.* The grievance does not mention Defendant by name. *Id.* CTF's Grievance Coordinator R. Monroy received the grievance on July 9, 2021. *Id.* ¶ 6, Ex. A (Dkt. 33-5 at 9-10). Grievance Coordinator Monroy divided the grievance into two separate claims: claim 1 for issues relating to "CTF expos[ing] [Prado] to Covid as they brought another inmate from another yard to his cell," and claim 2 for issues relating to "medi[c]al issues with Covid." *Id.* at 9.

Claim 1 was "rejected at the first level because it was untimely under [the] California Code of Regulations, title 15 since Prado failed to submit it within 30 calendar days of the alleged conduct that is the subject of the grievance." Monroy Decl. ¶ 6. Meanwhile, claim 2 was "exhausted and it was disposed of with no intervention." *Id.*

On July 9, 2021, Grievance Coordinator Monroy issued two documents in which he specifically noted the decision as to claim 1. Monroy Decl., Ex. A (Dkt. 33-5 at 11, 14). First, he issued a document entitled, "Claim Action Taken," in which he rejected claim 1 at the first level, and he noted the following reason: "Claim Exceeded Time Limit for Submission." *Id.* at 11. Grievance Coordinator Monroy included the following instructions for Prado:

> This serves as your response by the Office of Grievances. If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals.

2

> Do not resubmit this claim to the Office of Grievances at CTF-Facility A.

*Id.* Second, Grievance Coordinator Monroy issued a document entitled, "OOG Acknowledgement of Receipt and Closure of Grievance," in which he further explained why claim 1 of Prado's grievance had not been assigned for review and response, stating as follows:

> Claim # 001:
>
> Your claim concerning COVID-19; Other issues – NOS is being rejected by Office of Grievances for the reason(s) indicated below:
>
> You did not submit the claim within the timeframe required by California Code of Regulations, title 15. The date you discovered the adverse policy decision, action, condition, or omission by the Department was 12/9/2020; the date you submitted the claim was 07/09/2021. You should have submitted your claim on or by 01/08/2021 to meet the 30 calendar day requirement set forth in the regulations.
>
> This serves as your response by the Office of Grievances. If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals.
>
> Do not resubmit this claim to the Office of Grievances at Correctional Training Facility.

*Id.* at 14. Thus, these two documents informing Prado of the rejection decision as to claim 1 advised that he could separately appeal the rejection decision. *Id.* Prado did not do so. *See* Monroy Decl. ¶ 6. Instead, Prado filed the instant action, in which he raises allegations similar to claim 1, involving an Eighth Amendment claim against Defendant for exposing him to COVID-19.

### C.    **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment under Federal Rule of Civil Procedure 56 on grounds that Prado failed to properly exhaust available administrative remedies before filing suit, as required by the PLRA. Dkt. 30. Prado filed an opposition, in which he requests an evidentiary hearing. Dkt. 40. Defendant filed a reply, in which he opposes an evidentiary hearing because "Prado has not given any indication he can close the evidentiary gaps in his case relating to deliberate indifference and causation, much less exhaustion or qualified immunity." Dkt. 41 at 5. Finally, Prado filed an unsolicited surreply to Defendant's motion for summary judgment, *see* Dkt.

1  42, which Defendant seeks to strike, *see* Dkt. 43.

2  For the reasons outlined below, the Court GRANTS Defendant's motion for summary
3  judgment, and it DENIES as moot the motion for an evidentiary hearing and motion to strike.

## II. DISCUSSION

### A. Standard of Review

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56. *Id.* at 1168. The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. *Id.* at 1172. If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* The ultimate burden of proof remains with the defendant, however. *Id.*

If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

### B. Analysis

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Ngo*, 548 U.S. at 93. A prisoner not only must pursue every available step of the prison appeal process but also must adhere to "deadlines and other critical procedural rules" of that process. *Id.* at 90.

4

1    Compliance with prison grievance procedures is all that is required by the PLRA to
2    "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in
3    a grievance to comply with the grievance procedures will vary from system to system and claim to
4    claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper
5    exhaustion. *Id.* at 218. In California, the regulation requires the prisoner "to lodge his
6    administrative complaint on CDC[R] Form 602 and 'to describe the problem and action
7    requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting former Cal. Code Regs.
8    tit. 15 § 3084.2(a)).

9    A prisoner must "exhaust his administrative remedies *prior* to sending his complaint to the
10   district court." *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (emphasis added). The
11   prisoner cannot comply with the PLRA's exhaustion requirement "by exhausting available
12   remedies during the course of the litigation." *Akhtar v. Mesa*, 698 F.3d 1202, 1210 (9th Cir. 2012)
13   (citation omitted).

14   The CDCR provides its inmates and parolees the right to administratively grieve and
15   appeal any "policy, decision, action, condition, or omission by the Department or departmental
16   staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit.
17   15, § 3481(a).[3]

18   Under the regulations effective June 1, 2020, there are two levels of review for non-health-
19   care appeals by inmates, referred to as a grievance and an appeal. At the first level, the inmate
20   submits a form CDCR 602-1 to the Institutional Office of Grievances at the prison or other facility
21   where he is housed. *See id.* at § 3482(a), (c) (repealed eff. June 1, 2020). "In response, a claimant
22   shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the
23   reasoning for the Reviewing Authority's decision as to each claim." *Id.* at § 3481(a) (repealed eff.
24   June 1, 2020). At the second level, an inmate dissatisfied with the Institutional Office of

---

[3] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.

5

1  Grievances' decision at first level submits a form CDCR 602-2 to the CDCR's Office of Appeals
2  in Sacramento. *Id.* at §§ 3481(a), 3485(a) (repealed eff. June 1, 2020).

3  Prisoners also may file complaints regarding healthcare policies, decision, actions,
4  conditions, or omissions using a form CDCR 602 HC. Cal. Code Regs. tit. 15, § 3999.226(a),
5  3999.227. Such complaints are subject to two levels of review – an institutional level of review
6  and a headquarters level of review. *Id.*

7  A grievance should include sufficient information "to allow prison officials to take
8  appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (citation
9  and internal quotation omitted). To initiate the grievance process, an inmate must submit a CDCR
10 Form 602 within thirty calendar days of the event or decision being appealed. *See* Cal. Code
11 Regs. tit. 15, § 3482(b)-(d). The PLRA's exhaustion requirement cannot be satisfied "by filing an
12 untimely or otherwise procedurally defective administrative grievance or appeal." *Ngo*, 548 U.S.
13 at 84.

14 There are "three kinds of circumstances in which an administrative remedy, although
15 officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643
16 (2016). First, "an administrative procedure is unavailable when (despite what regulations or
17 guidance materials may promise) it operates as a simple dead end—with officers unable or
18 consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative
19 scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an
20 administrative remedy is not available "when prison administrators thwart inmates from taking
21 advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at
22 644.

23 A prisoner must provide evidence, not just make conclusory allegations, to meet his burden
24 to show that existing and generally available administrative remedies were effectively unavailable.
25 *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported
26 allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact.
27 *Id.*

28 Here, the evidence submitted by Defendant shows that Prado did not file an appeal

6

1   challenging the rejection of claim 1 of grievance log number 000000137705, in which he claimed
2   that he was infected with COVID-19 due to staff action. Monroy Decl. ¶ 6. The response to
3   Prado's grievance informed him that claim 1 was untimely and further explained the steps he
4   needed to take in order to exhaust available administrative remedies as to claim 1, but yet he failed
5   to do so. Monroy Decl., Ex. A (Dkt. 33-5 at 11). There is no evidence that Prado was prevented
6   from taking these steps by officers unable or unwilling to provide any relief, that the
7   administrative scheme was incapable of use, or that he was thwarted by prison administrators from
8   taking advantage of the grievance process. *See Ross*, 578 U.S. at 643-44.

9   In sum, the evidence submitted by Defendant meets her burden of proving that there was
10  an available administrative remedy that Prado failed to properly exhaust in connection with his
11  Section 1983 claim before filing this action. *See Albino*, 747 F.3d at 1172. The burden then shifts
12  to Prado to present evidence that there was something in this particular case that made existing and
13  generally available administrative remedies effectively unavailable to him. *See id.* In his
14  opposition, Prado seems to argue in a conclusory fashion that the grievance process was
15  unavailable to him, stating as follows:

> Plaintiff Luis Prado was (and still is) housed at [CTF] during the entire State of Emergency COVID-19 Pandemic Lockdowns at CTF. The danger to Mr. Prado was both imminent, and in many areas of CTF occurring already at the time he was irreparably harmed. These undisputed facts of the conditions were present during the time period Plaintiff was harmed meets more than one of the elements, one only being required, for exemption from the need to exhaust all State remedies, laid out by the [PLRA]. Plaintiff[']s 42 U.S.C. § 1983 shall proceed under these circumstances, and exempting the Plaintiff from exhaustion requirement.

*See* Dkt. 40 at 2-3. In his surreply, Prado again makes the following conclusory arguments:

> The Plaintiff was [in] imminent danger of being infected, and the[re] is no grievance process available to the Plaintiff that CDCR could provide to prevent, or remedy, an act of deliberate indifference by the Defendant. The Plaintiff, by case law, regarding being forced to receive an infected cell-mate, as evidenced by the Defendants logbook, requires no exhaustion of these unavailable remedies.

Dkt. 42 at 2. However, such conclusory statements that the grievance process was unavailable to
him are insufficient to create a triable issue of fact because Prado fails to specifically explain how
he was prevented from appealing the rejection of claim 1. *See Draper*, 836 F.3d at 1079-80

7

(holding that plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what kinds of impeding and unethical conduct occurred). Accordingly, Defendant is entitled to summary judgment under Rule 56. *See Albino*, 747 F.3d at 1166.

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court **GRANTS** Defendant's motion for summary judgment on grounds that Prado failed to properly exhaust available administrative remedies before filing suit.[4] Dkt. 33. Pursuant to the law of the circuit, Prado's Eighth Amendment claim is **DISMISSED** without prejudice.

2. Defendant's motion to strike the surreply and Prado's request for an evidentiary hearing are **DENIED** as moot. Dkts. 40, 43.

3. The Clerk of the Court shall terminate all pending motions and close the file.

4. This Order terminates Docket Nos. 33, 40, and 43.

**IT IS SO ORDERED.**

Dated: December 22, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[4] Because the Court has granted Defendant's motion for summary judgment based on Prado's failure to exhaust available administrative remedies, it need not address Defendant's alternative arguments in support of summary judgment. *See* Dkt. 33 at 13-18.